1  Ryan C. Bundy
   ID No. 79400-065
2  Nevada Southern Detention Hearing
   2190 Ease Mesquite Avenue
3  Pahrump, Nevada 89060
   Pro se
4

5              UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF NEVADA
6                    SOUTHERN DIVISION

7  RYAN C. BUNDY,                      §
8                      *Plaintiff,*    §
                                       §
9  v.                                  §
                                       §
10 UNITED STATES OF AMERICA, INC.,     §
11 CORECIVIC,
12 CHARLOTTE COLLINS,           **2:17-cv-01127-JAD-GWF**
13 JOHN AND JANE DOES 1 THROUGH 15
14                     *Defendants.*   §
                                       §
15

16        <u>PLAINTIFF RYAN C. BUNDY'S</u>
17 <u>MOTION FOR PRELIMINARY AND INJUNCTIVE RELIEF</u>
18

19      **COMES NOW,** the pro per Plaintiff, Ryan C. Bundy (hereinafter "Bundy" or "Plaintiff"),
20 and moves this Court pursuant to Title 42 U.S.C. § 1983; and 18 U.S.C. § 3626(a)(2) to issue an
21 **EMERGENCY** Preliminary Injunctive Relief against CoreCIVIC and the United States Marshal
22 Service ("USMS") and the Department of Justice (hereinafter "DOJ" or "Justice" or "the
23 Government"); incorporating his Declaration in support of this Motion, Plaintiff Bundy states the
24 following:

25                      I.    <u>INTRODUCTION</u>

26      On or about January 26, 2016, Ryan C. Bundy (hereinafter "Bundy" or "Plaintiff") was
27 arrested in Oregon for a litany of fraudulently concocted federal charges by the Bureau of Land
28 Management ("BLM"), the National Park Service("NPS"), both believed to be under the

Department of the Interior and the Department of Justice ("Justice") (See Case No. 2:16-cr-00046). After being unconstitutionally abused by the individual officials in the prison facility in Oregon and unconstitutionally injured by the acts and omissions of facility employees and USMS agents and employees; and by unconstitutional policies instituted by the USMS and the Multnomah County Sheriff in Portland Oregon for approximately nine, (9) months, Bundy was acquitted on all charges by a jury of his peers in the Portland case. Upon being acquitted of all charges, Bundy was immediately re-detained; and carted off to a facility in Washington State before being finally extradited to Las Vegas, Nevada on November 28, 2016.

Upon arrival in Nevada, Bundy, a pre-trial detainee, has been housed under a contract between CoreCIVIC and the United States Marshal's Service at the Nevada Southern Detention Center ("NSDC") for over one hundred days. Since his arrival, Bundy has experienced repetitive and arbitrary Strip Search and Body Cavity Searches by CoreCIVIC employees at the express direction of USMS Agent "Carter". As a pre-trial detainee at NSDC, Bundy has been unconstitutionally Strip Searched and Body Cavity searched over forty (40) times at NSDC and over sixty (60) times in Oregon. More particularly, Bundy and other pre-trial detainees are Strip Searched and Body Cavity searched before and after every attorney visit at the NSDC facility; before and after Court appearances; and at other random and arbitrary times throughout the day. These unconstitutional searches are performed without a legitimate penal objective. These searches are pretextual and constitute exaggerated responses.

Further, Plaintiff and other prisoners are wearing NSDC uniforms. Plaintiff and other prisoners have (4) layers of restrictive cuffing on their hands and legs which make it impossible to move their arms, or to possess or hide any contraband on their person, or more specifically within their body cavities. As an extra level of security, CoreCIVIC employees incorporate a "black box" over top of the hand cuffs which further restrict the movement of Plaintiff's arms forcing complete compliance and rendering pre-trial detainees such as Bundy helpless and unable to freely move their arms, wrists or hands. Moreover, shackles are placed on his ankles to restrict movement of his legs. There is no [r]easonable opportunity for the Plaintiff to escape the four, (4) layers of

restrictive devices applied to his arms and legs. There is no [r]easonable opportunity for the Plaintiff to acquire or conceal contraband while placed in the restraints *supra*.

On or about March 21, 2017, Bundy and others detained surrounding the same charges expressly began refusing to allow CoreCIVIC employees to conduct strip search and body cavity searches on their person. As a direct result, CoreCIVIC employees forced Bundy and the pre-trial detainees, who are innocent of all charges filed against them by Justice, into disciplinary segregation with no meaningful hearing on the matter. Bundy has been housed in disciplinary segregation three (3) times for over 35 days as of April 18, 2017. Bundy has been forced to endure no working toilet and no toilet paper inside the 7x11 foot disciplinary segregation cell which has no window, and only contains a sheet of metal bench extending from the wall where a one inch mat rests thereupon.

Since being forced into disciplinary segregation, and as of April 20, 2017, Bundy has not received any opportunity to exercise each day for one hour in the prior thirty seven days. Most of his legal documents and media have been confiscated, effectively barring his ability to prepare a reasonable defense against the government. Bundy is unable to reasonably move legal documents in and out of the NSDC facility in support of his filings and his defense. On several occasions, the Court has deemed very important pleadings filed by Mr. Bundy as out of time; and not granted due consideration of the same on such issues as "detention hearings" and Plaintiff's rights to a speedy trial. Due to the punishment by CoreCIVIC employees and the oppressive policies by the USMS, Mr. Bundy is unable to timely receive paperwork from the District Court, to read and analyze the same in a reasonable amount of time at the facility law library within NSDC, and work with counsel and others to draft responsive pleadings, in order to timely file the same.

Continually and repeatedly, Bundy has been refused confidential legal visits with his stand-by counsel. He has been unable to communicate with Angela Dows via a secured telephone line or otherwise obtain any meaningful legal assistance from his stand-by counsel and others which he has chosen to work with him.

Moreover, Bundy was expecting a clergy visit from his Bishop from the Mormon Church

which he regularly attends in Bunkerville, NV at one point during this nightmare. As Bundy attempted to participate in his own religious visit with the clergy, employees from CoreCIVIC forbid him from participating while allowing others to attend. As Bundy insisted to participate or have time with his religious mentor from the Church, Bundy was forced up against a wall by numerous CoreCIVIC employees who then dragged Bundy to the ground, shoving, kneeing and slamming him into the ground and sitting on him. As a result, Bundy was placed in hand cuffs behind his back and put into disciplinary segregation without a hearing on the matter.

II.     SUMMARY OF THE ARUGMENT

The acts and omissions committed by CoreCIVIC Defendants and the USMS Defendants constitute punishment against Plaintiff; as well as to other pre-trial detainees in violation of their first, fourth, fifth, eighth and fourteenth amendment rights to:

1.) Not be forced to be unconstitutionally strip searched and body cavity searched repetitively without a reasonable suspicion that Plaintiff was, is, or intended to commit a crime; and,

2.) Not be retaliated against for refusing to consent to unconstitutional strip search and body cavity searches; and,

3.) Not be thrown in "the hole" without a meaningful hearing about a purported violation or rule, regulation, or infraction; and,

4.) Not be refused adequate daily exercise; and,

5.) Not be subject to unsanitary conditions in "the hole" with no working toilet and no toilet paper; and,

6.) Not have his access to the Courts thwarted by barring his stand-by counsel from entry into NSDC for attorney visits; and,

7.) Not have his legal documents and media confiscated from his possessions while preparing for his defense.

Attached herein is Plaintiff Bundy's **proposed Civil Rights Complaint** under *Bivens,*

*Declaratory and Injunctive Relief, and State Common Law Assault and Battery* in support of his

Motion for Preliminary Injunctive Relief; (See Exhibit A) and Ryan C. Bundy's Declaration.

(See Exhibit B)

## III.   STANDARD

28 U.S.C 3626(a)(2) states:

(1) **PRELIMINARY INJUNCTIVE RELIEF** -

In any civil action with respect to prison conditions, to the extent otherwise authorized by

law, the court may enter a temporary restraining order or an order for preliminary injunctive relief.

Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct

the harm the court finds requires preliminary relief, and be the least intrusive means necessary to

correct that harm. The court shall give substantial weight to any adverse impact on public safety or

the operation of a criminal justice system caused by the preliminary relief and shall respect the

principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief. Preliminary

injunctive relief shall automatically expire on the date that is 90 days after its entry, unless the court

makes the findings required under subsection (a)(1) for the entry of prospective relief and makes the

order final before the expiration of the 90-day period.

(2) Further, 42 U.S.C 1983 states:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of

any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of

the United States or other person within the jurisdiction thereof to the deprivation of any rights,

privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in

an action at law, suit in equity, or other proper proceeding for redress, except that in any action

brought against a judicial officer for an act or omission taken in such officer's judicial capacity,

injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief

was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia. *(However, this action may be brought under Bivens; or otherwise the Court may convert or construe this as a federal habeas in the interest of justice and judicial economy)*

(3) Moreover, the Fifth Amendment states:

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury, except in cases arising in the land or naval forces, or in the militia, when in actual service in time of war or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

(4) The Eighth Amendment states:   Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

(5) Additionally, The Thirteenth Amendment of the Constitution of the United States proclaims that: Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party **SHALL HAVE BEEN DULY CONVICTED**, shall exist within the United States, or any place subject to their jurisdiction.

(6) If a restriction or condition is not reasonably related to a legitimate goal-if it is arbitrary or purposeless-a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees Bell v. Wolfish, 441 U.S. 520, 539, 99 S. Ct. 1861, 1874, 60 L. Ed. 2d 447 (1979)

(7) The *Ninth Circuit* holds that preliminary injunctive relief is available to a party who demonstrates either (1) a combination of probable success on the merits and the possibility of irreparable harm; or (2) that serious questions are raised and the balance of hardships tips in its

favor." *A & M Records*, 239 F.3d at 1013(internal quotation omitted). Each of these two formulations requires an examination of both the potential merits of the asserted claims and the harm or hardships faced by the parties. These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *Id.* (internal citation and quotation omitted); *see also Sun Microsystems, Inc. v. Microsoft Corp.*, 188 F.3d 1115, 1119 (9th Cir.1999) ("These two alternatives represent extremes of a single continuum, rather than two separate tests." (internal quotation omitted)). If the movant "has a 100% probability of success on the merits," this alone entitles it to reversal of a district court's denial of a preliminary injunction, without regard to the balance of the hardships. *Baby Tam & Co. v. City of Las Vegas*, 154 F.3d 1097, 1102 (9th Cir.1998). Additionally, in cases where the public interest is involved, the district court must also examine whether the public interest favors the plaintiff." *Fund for Animals v. Lujan*, 962 F.2d 1391, 1400 (9th Cir.1992)

IV.   ARGUMENT

According to *Bell v. Wolfish*, 441 U.S. 520, 531, 535, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), pretrial detainees at the very least "retain the rights afforded incarcerated individuals," and so their conditions of confinement must not amount to punishment. To determine if conditions are punitive, the determination hinges upon "whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purposes assigned [to it]." *Bell*, 441 U.S. at 538. Under established Ninth Circuit authority, a condition is punitive under *Bell* if it is "intended to punish," or is "excessive in relation to its non-punitive purpose," or "is employed to achieve objectives that could be accomplished in so many alternative and less harsh conditions." *Jones*, 393 F.3d at 934 (citations omitted). But, if a particular condition or restriction of pretrial detention is "reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.' " *Bell*, 441 U.S. at 539.

Legitimate, non-punitive government interests include "ensuring a detainee's presence at trial, maintaining jail security, and effective management of a detention facility." *Jones*, 393 F.3d at 932 (citing *Hallstrom v. City of Garden City*, 991 F.2d 1473, 1484 ((9th Cir. Cir.1993)).Al-Kidd v. Gonzales, No. CV 05-093-EJL-MHW, 2008 WL 553777, at *10 (D. Idaho Feb. 13, 2008), report and recommendation adopted, No. CV:05-093-S-EJL-MHW, 2008 WL 2795137 (D. Idaho July 17, 2008.

   A. **Plaintiff is likely to succeed on the merits.**

   i.)    **Repetitive Strip Search and Body Cavity Searching against Plaintiff was Excessive, Arbitrary and constitutes Punishment.**

   In this case, Defendants restrictions are punitive and amount to punishment against Mr. Bundy. The alternative purpose to which [the restriction] may rationally be connected is assignable for it is purportedly safety. However, strip searching and body cavity searching Bundy two to five times per day is not only excessive in relation to the alternative purpose assigned to it; but it is arbitrary due to the level of arm and leg restraints which are already actively utilized when transporting pre-trial detainees to and from NSDC." *Bell*, 441 U.S. at 538. Further, the policy of CoreCIVIC employees unreasonably searching Bundy related to visits with his attorney is also punitive and amounts to punishment, simply due to the fact that all CJA attorneys are officers of the Court. CJA attorneys are paid by the federal government to represent each pre-trial detainee who requests one. Indeed, they are presumed to be honest and law abiding because attorneys are "officers of the court". Without CoreCIVIC officials being able to articulate particular furtive movements inside the actual attorney visit; any suspicious volitional acts (for example: witnessing a pre-trial detainee reach down towards his leg and appear to put something inside his sock), there is no reasonable facts to rely on to perform the strip search and body cavity search in violation of Bundy's fifth amendment right to not be punished before a finding of guilt by a jury or competent

judge.  Additionally, pre-trial detainees wear  two-piece "jump suits"; hence, there is no reasonable opportunity available to remove purported contraband during an attorney-visit and place an object within the pre-trial detainees real body cavity or up into their  "buttocks".

Moreover, CoreCIVIC has alternative methods of achieving the same purported "objective" without continually and repeatedly violating Plaintiff's rights to privacy, dignity and bodily integrity secured by the fourth and fifthamendment. Indeed, CoreCivic could achieve the same level of security under Plaintiff's well plead facts by doing pat-down searches for contraband. Regardless, Plaintiff's arms and legs are bound with four, (4) layers of restraining devices including cuffs, shackles and a "black box" transport to restrain arm movement all together, Defendants use of pat-down searches would achieve the objective and protect Plaintiff from being punished in violation of the fourth and fifth amendment.

Defendants also have metal detectors in use at the NSDC facility that they refuse to utilize to secure the facility and achieve its objective.  Pre-trial detainees entire body can be successfully scanned by these handheld and walk-thru detectors by Defendants without violating Bundy's and others similarly situated constitutional rights and personal objectives to maintain their privacy, dignity and bodily integrity; and without punishing Bundy and other pre-trial detainees.

Lastly, Defendants have implemented video surveillance which is actively monitored by CoreCIVIC employees.  Actively surveilling pre-trial detainees on video whom have contact with individuals from outside the facility allows Defendants to obtain a reasonable suspicion for strip searching and cavity searching Bundy and other detainees; otherwise refraining from doing so when the reasonableness does not exist, instead of instituting blanket policies to search Bundy and others each time they leave their "pod" environment; visit with an attorney; or when they are transported to and from Court proceedings.   Reasonableness is a fact specific inquiry and does not stop at the

strict objective of the facility. Indeed, it analyzes whether the use of a blanket objective is merely a pretext to an exaggerated response to excessive punishment.

In sum, when prisoners challenge conditions or deprivations associated with their confinement, a court must consider the two components of an Eighth Amendment claim: (1) the objective component, which addresses whether the deprivation was sufficiently serious to constitute "cruel and unusual" punishment; and (2) the subjective component, which addresses whether the prison officials acted with "a sufficiently culpable state of mind." *Wilson v. Seiter,* 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). The Supreme Court explained that the latter intent requirement did not emanate from "the predilections of this Court, but the Eighth Amendment itself, which bans only cruel and unusual *punishment.* If the pain inflicted is not formally meted out *as punishment* by the statute or the sentencing judge, some mental element must be attributed to the inflicting officer before it can qualify" as punitive. *Id.* at 300, 111 S.Ct. 2321 (emphases in original). Byrd v. Maricopa Cty. Sheriff's Dep't, 565 F.3d 1205, 1216–17 (9th Cir. 2009), on reh'g en banc, 629 F.3d 1135 (9th Cir. 2011)

Plaintiff has shown that he can meet the objective and subjective component of the test to determine whether the Defendants acts and omissions supra meet the legal standard of punishment in violation of his fourth, fifth and eighth amendment rights; hence, it is likely that Ryan Bundy will prevail on these merits.

**ii.)    Defendants acts and omissions were retaliatory against Bundy and other pre-trial detainees similarly situated.**

Under established Ninth Circuit authority, a condition is punitive under *Bell* if it is "intended to punish," or is "excessive in relation to its non-punitive purpose," or "is employed to achieve objectives that could be accomplished in so many alternative and less harsh conditions." *Jones,* 393 F.3d at 934 (citations omitted).    Indeed, CoreCIVIC was directed by USMS Agent "Carter" to specifically strip search and body cavity search Bundy and others excessively as

punitive measure to cause stress, angst and personal uneasiness among Bundy and others similarly situated. Indeed, USMS works directly with Justice in the prosecution of Bundy and his family in Case No.: 2:15cr00046. In the USMS directing its prison contractor to excessively strip search and body cavity search Bundy and others; they intended to provoke Bundy to refuse to comply with the excessive orders given by CoreCIVIC for the purpose of finding a reason to keep him and others locked down in disciplinary segregation.

These actions are not only excessive but they are retaliatory against Bundy, his brothers and their father, Cliven Bundy --- in response to their peaceful position against the Federal Government and specifically BLM during two highly politicized peaceful protests; where the Federal Government, unprovoked, shot Ryan Bundy and killed LaVoy Finicum. (See https://www.youtube.com/watch?v=9DGXDgzOCls)  In essence, the act of creating excessive strip search and body cavity searches at the direction of USMS and covering up the intentional acts under the pretext of a legitimate penal objective constitutes  punishment against Bundy and others. There can be no legitimate penal objective for the excessiveness considering the other alternative security measures available to Defendants including pat-down searches, metal detectors, video and electronic surveillance as well as the use of "black box" restraints.  The sheer volume and intensity of the complained of acts and omissions causes great "pause"; considering the DOJ, by and through the USMS and CoreCIVIC, are likely responsible for the retaliatory animus by conspiring with USMS agents to excessively strip search and body cavity search Bundy and others arrested for the Bundy "peaceful protest" with an exaggerated and illegitimate excuse parenthetically born in the penal objective of safety.

Bundy is likely to prevail on the merits because the excessiveness of the strip search and body cavity searches are indisputable. Over 100 searches within several months is shockingly punitive and arises to the level of undue punishment under the facts of the instant case. Further, just

by the nature of the conflict with the federal government, Bundy will be able to prove [through conversations overheard or comments made by prison officials] that the searches are being done in retaliation for the Bundy's protests against the Federal Government which garnered national attention from 2014 to the present; notwithstanding the retaliatory effect from the Portland Case where Bundy and his family were acquitted on all federal charges by a jury. Based on the directives made by the USMS agent to CoreCIVIC employees *supra*, Plaintiff will likely be able to establish that these acts were an exaggerated response that was arbitrarily excessive and for malicious and improper purposes and not to further a legitimate penal objective at NSDC. Based on the above, Bundy is likely to prevail on the merits.

### iii.)  Plaintiff Received No Hearings Prior to Being Punished

When Bundy stopped allowing the CoreCIVIC employees to commit arbitrary and excessive strip search and body cavity searches in violation of his privacy, his dignity and his bodily integrity; Bundy experienced further punishment when he was thrown into disciplinary segregation without any meaning hearings.  Courts have found that forcing pre-trial detainees inside disciplinary segregation absent a hearing – constitutes punishment per se.

If the Court finds that the searches were punitive and violated Plaintiff's constitutional rights, then it should also conclude that when Bundy was forced into disciplinary segregation for over 37 days (and counting), most of which were with no working toilet, no toilet paper, no access to legal documents as well as other necessary effects to prepare his court defense; and without being allowed to have daily exercise, is also punitive and goes to the subjective prong of the "punishment" test.  If Bundy succeeds on the merits of the unconstitutional searches *supra* – he must prevail on the merits that will show being thrown in "the hole" for not allowing Defendants strip search and body cavity search him also constitutes further punishment and a violation of his constitutional rights as a pre-trial detainee.

        **iv.)**     **Defendants have foreclosed on Plaintiffs access to confidential visits or phone calls with stand-by counsel is punitive and has no legitimate pre-trial detainee safety objective.**

Obtaining private attorney visits is tantamount to preparing a defense against the federal crimes that Bundy is charged with. The U.S District Court ordered Bundy to have access to stand-by counsel. While Plaintiff Bundy has been in "the hole", Defendants have forbidden him to have secured access to speak with his assistants and stand-by attorney. Indeed, unless and until Bundy allows Defendants to unreasonably strip search and body cavity search him after he leaves "the hole" where he has nothing in the room with him; prior to meeting with counsel; and immediately following his meeting with counsel – Bundy is forbidden from meeting with his stand-by counsel. Further, at all relevant times, Bundy has not been allowed to have secured phone calls with his assistants and counsel.

Assuming, for the sake of argument, that the strip search and body cavity searches are found to be punitive in nature; and therefore are unconstitutional punishment; it is likely that Bundy will prevail on these merits because the issue of forbidding Bundy to have secured access to his counsel is predicated on several layers of exaggerated and excessive punishment related to the strip search and body cavity searches. Bundy avers that these are exaggerated responses to a legitimate penal objective which are based on a directive by USMS agents to retaliate against him and other pre-trial detainees similarly situated, and ultimately instituted by the federal government.[1]

**B.** **Plaintiff is likely to suffer irreparable harm absent preliminary injunctive relief.**

Incorporating the previous arguments as if fully restated herein, Bundy has already and will

---

[1] Note: The Federal Government's retaliation for Bundy's national protest position against the BLM and DOJ; who are presently prosecuting Bundy in Nevada; where Bundy was acquitted of similar criminal charges in Portland Oregon by the same prosecutors – is material evidence to substantiate the retaliatory actions against Plaintiff. The acts by DOJ and USMS in directing CoreCIVIC to perform pretextual and exaggerated penal security functions were and are retaliatory and utilized for the purpose of dehumanizing Bundy et al; thwarting Plaintiff's and others attempts to prepare for trial by forbidding access to legal counsel, resources, legal documents, USB thumb drives, the act of moving electronic documents in and out of the facility for filing have been blocked except for Bundy has to direct his documents written over the phone to non-attorneys for electronic filing via stand-by counsel. (This is a daunting and impossible task which relates to the parable of the ant whose master ripped off all of his legs then commanded the ant to jump over the string – Clearly this is not reasonable and prejudices Plaintiff's access to the courts when he habitually files documents [late] per the scheduling order; and the Court systemically DENIES all of Bundy's motions in the instant criminal case 2:15cr0046)

continue to likely suffer extreme mental distress and turmoil from being punished in "the hole" with no working toilet, no toilet paper, no exercise and no secured contact visits with his stand-by counsel.  If Defendants are allowed to foreclose on Bundy's legal access and resources through the exaggerated pretext of punishing him for refusing to be strip searched and cavity searched, Bundy will not be able to prepare for his trial against those same Defendants who have charged him with serious federal crimes.

        In the absence of an emergency injunction to enjoin Defendants from banning his secured visits with counsel, secured phone calls with counsel and legal team, it is likely that Bundy will be convicted of all charges and be sentenced to a significant amount of punishment by the Court.

### C.  The balance of hardship tips sharply in Plaintiff's favor.

        Incorporating the previous arguments as if fully restated herein, the hardship tips sharply in Bundy's favor for the following reasons.  Based on the retaliatory allegations and the alternative options Defendants are foreclosing on the usage of; Plaintiff would have no other option except to consent to punishment in violation of his fourth, fifth, eighth and thirteenth amendment rights. Alternatively, even if Defendant's conduct was not retaliatory against Bundy, they could easily employ other widely used and acceptable prison techniques and tools within their possession to meet the same purported penal objective, which for the sake of argument; they will  allege is safety.

        Without this Court's immediate intervention, Bundy is not able to accept or consent to the alleged punishment at any time prior to the unanimous verdict from a jury of his peers.  Further, Plaintiff needs the oversight from this Court to impose constitutional boundaries and oversight on Defendants oppressive actions against him and others while being adversely detained at NSDC; and direct Defendants, *et al* to utilize other reasonably effective methods and tools to achieve the same "safety" objective absent a reasonably articulate suspicion that Bundy, in fact, did hide or conceal contraband on his body or inside his body cavity.

**D. Plaintiff need not make a showing of the public interest element to obtain preliminary injunctive relief**

Since the *Ninth Circuit* has held that as an alternative to the four traditional equitable criteria for relief through preliminary injunction, plaintiff may prove *either* (1) a likelihood of success on the merits and the possibility of irreparable injury, *or* (2) that serious questions going to the merits were raised and the balance of hardships tips sharply in his favor. *Southwest Voter Registration Educ. Project*, 344 F.3d at 917 (emphasis added). Here, Plaintiff has made an adequate showing that he is likely to succeed on the merits, and there is more than a possibility for irreparable harm towards Plaintiff; hence, the inquiry and the test is established to grant Plaintiff's motion for preliminary injunctive relief.

## V.  CONCLUSION

For the reasons mentioned, Plaintiff's constitutional rights to 1.) be free from punishment; 2.) access to the Courts – access to secured communications with legal counsel; 3.) to be free from unreasonable searches; and, 4.) to be housed in sanitary living conditions with adequate exercise or the opportunities thereto being provided are being intentionally violated by the DOJ by and through a conspiracy with CoreCIVIC and the USMS in retaliation to Plaintiff's participation in the national protest against the BLM and the federal government.

Indeed, after Plaintiff and others were acquitted of federal charges stemming from the Oregon incident, related to the occupation of public land during the Portland Case, the Department of Justice by and through the Defendants are likely to be the driving force of the oppression towards Plaintiff and others, which is presently is occurring inside the NSDC facility and should be stopped.

**WHEREFORE,** Plaintiff Bundy requests the following injunctive relief from this Court: To enjoin Defendants from:

1.) Executing strip-body cavity searches on Plaintiff and other pre-trial detainees surrounding attorney visits; or when there is alternative means to perform the same search; or when there is no reasonable justification (suspicion) Plaintiff was concealing or hiding contraband in his rectal area between his buttocks cheeks.

**2.)** Forcing Plaintiff in the "hole" without a meaningful hearing on the issue of excessive strip-cavity searches and other issues.

**3.)** Not allowing Plaintiff any reasonable amount of daily exercise.

**4.)** Not providing working toilets, toilet paper and personal effects.

**5.)** Taking away and forbidding Plaintiff from maintaining possession of his legal documents, papers "thumb-drive" and affects.

**6.)** Blocking Clergy visits.

**7.)** Blocking secured attorney visits from Plaintiff's stand-by counsel; and assistants.

**8.)** Blocking secured phone conversations with Plaintiff's stand-by counsel and others participating in his defense.

**9.)** Placing Federal Confidential Informants inside NSDC regular attorney-visits with Plaintiff and other pre-trial detainees charged in the same incident; who are admittedly working for and being paid by BLM agents (the Federal Government) while testifying on the witness stand during the first trial. (See Exhibit B)

DATED: April 21, 2017                          RESPECTFULLY SUBMITTED,


Bundy, Ryan C
Pro Se Plaintiff